**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **LARISA GANKINA,** | : | |
| **Plaintiff** | : | **CIVIL ACTION** |
| | : | |
| **v.** | : | |
| | : | |
| **MICHAEL J. ASTRUE,** | : | **No. 11-3630** |
| **Commissioner of the** | : | |
| **Social Security Administration,** | : | |
| **Defendant** | : | |
| | : | |

## REPORT AND RECOMMENDATION

TIMOTHY R. RICE                                                   February 6, 2012
U.S. MAGISTRATE JUDGE

      Larisa Gankina seeks judicial review of the Administrative Law Judge's ("ALJ") decision

rejecting her application for Supplemental Security Income ("SSI"). Gankina alleges the ALJ

failed to: (1) enforce a subpoena for necessary medical records; (2) properly evaluate whether

Gankina's mental impairment met Listing 12.04, related to depression;[1] (3) evaluate whether

Gankina's multiple impairments, in combination, met a Listing; and (4) properly determine

Gankina's residual functional capacity ("RFC").[2] Plaintiff's Brief and Statement of Issues in

---

     [1] The Listing of Impairments in Appendix 1, Subpart P, Part 404 of 20 C.F.R. is a
regulatory device used to streamline the decision-making process by identifying those claimants
whose medical impairments are so severe they would be found disabled regardless of their
vocational background. Sullivan v. Zebley, 493 U.S. 521, 532 (1990). The Listing defines
impairments that would prevent an adult, regardless of age, education, or work experience, from
performing "any" gainful activity, not just "substantial" gainful activity. Id.; 20 C.F.R. §
416.925(a) (purpose of the Listing is to describe impairments "severe enough to prevent a person
from doing any gainful activity"). The Listing was designed to operate as a presumption of
disability making further inquiry unnecessary. Sullivan, 493 U.S. at 532.

     [2] Gankina's RFC reflects "the most [she] can still do [in a work setting] despite [her]
limitations." 20 C.F.R. § 416.945(a).

Support of Request for Review at 4-27, <u>Gankina v. Astrue</u>, No. 11-3630 (E.D. Pa. Nov. 17, 2011) [hereinafter Pl.'s Br.].

 The ALJ's determination that Gankina's depression did not meet Listing 12.04 is supported by substantial evidence.  Nevertheless, the ALJ did not explain his reasoning for determining that Gankina's impairments, in combination, did not meet or equal a Listing.  This error precludes meaningful judicial review.  <u>See</u> <u>Torres v. Comm'r of Soc. Sec.</u>, 279 F. App'x 149, 152 (3d Cir. 2008).  On remand, the ALJ must give reasons to support his conclusion and identify the Listings he considered.

 I respectfully recommend Gankina's request for review be GRANTED.

BACKGROUND

 On July 26, 2005, Gankina filed an application for SSI, alleging disability as of August 1, 2001.  R. at 113.  Her application was denied on February 6, 2006.  R. at 96-99.  An ALJ determined Gankina was not disabled on May 25, 2007 after a hearing.  R. at 14-25.  This Court remanded the case at the Commissioner's request.  <u>See</u> Order, <u>Gankina v. Astrue</u>, No. 09-2761 (E.D. Pa. Jan. 7, 2010).  The ALJ heard testimony from Gankina, a medical expert, and a vocational expert on July 27, 2010.  R. at 961-99.  Dr. Philip Braun, the psychological medical expert who reviewed Gankina's mental health records, testified Gankina's depression did not meet Listing 12.04.  R. at 968.  He found Gankina had moderate difficulties in activities of daily living and in social functioning, marked difficulty in maintaining concentration, persistence, and pace, and no episodes of decompensation.[3]  <u>Id.</u>  Dr. Braun noted recent medical records had

---

[3] "Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration,

described Gankina's depression as being "in partial remission."  R. at 972.

The ALJ applied the five-step sequential analysis[4] to determine Gankina's disability claim.  R. at 629-39.  At step one, the ALJ found Gankina had not engaged in substantial gainful activity since seeking SSI on July 26, 2005.  R. at 630.  At step two, the ALJ found Gankina's degenerative disc disease of the lumbar spine with radiculopathy,[5] bone spurs on both feet, and major depressive disorder with anxiety were severe impairments.  R. at 630-31.  He found her

_____

persistence, or pace."  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C(4).

[4]  The Social Security Administration has adopted a system of sequential analysis for the evaluation of disability claims, which is codified at 20 C.F.R. § 416.920.  The steps of the analysis are summarized as follows:

Step One: If the claimant is working, and if the work is substantial gainful activity, the claimant is not disabled.  If the claimant is not working or is not engaging in substantial gainful activity, the analysis proceeds to Step Two.  20 C.F.R. § 416.920(a)(4)(i).

Step Two: If the claimant has no severe impairment and no severe combination of impairments that significantly limits his physical or mental ability to do basic work activity, the claimant is not disabled.  If there is a severe impairment or severe combination of impairments, the analysis proceeds to Step Three.  20 C.F.R. § 416.920(a)(4)(ii).

Step Three: If the claimant's impairment meets or equals criteria for a listed impairment or impairments in Appendix 1 to Subpart P of 20 C.F.R. Part 404, the claimant is disabled.  Otherwise, the analysis proceeds to Step Four.  20 C.F.R. § 416.920(a)(4)(iii).

Step Four: If the claimant retains the residual functional capacity to perform his past relevant work, the claimant is not disabled.  If the claimant cannot do the kind of work he performed in the past, the analysis proceeds to Step Five.  20 C.F.R. § 416.920(a)(4)(iv).

Step Five: If the claimant's residual functional capacity, age, education, and past work experience, considered in conjunction with the criteria listed in Appendix 2 to Subpart P of 20 C.F.R. Part 404, would permit the claimant to adjust to other work, the claimant is not disabled.  Otherwise, the claimant is disabled.  20 C.F.R. § 416.920(a)(4)(v).

[5]  Radiculopathy is a disease of the nerve roots, precipitated by chronic pressure on a spinal nerve root.  See Dorland's Illustrated Medical Dictionary 1395 (31st ed. 2007) [hereinafter Dorland's]; The Merck Manual 1901 (Mark H. Beers et al. eds., 18th ed. 2006).

obesity and frequent headaches were non-severe impairments.  Id.  At step three, the ALJ found

none of Gankina's medically determinable impairments, nor any combination thereof, met or

medically equaled a Listing.  R. at 631.

The ALJ next determined Gankina retained the RFC to "perform light work[6] . . . , except

that the claimant has additional non-exertional limitations in that she is restricted to entry level

positions for a person who does not speak English; are of low stress objectively; and . . . involve

simple, repetitive tasks; have limited to no exposure to other people; and require limited

interaction with supervisors."  R. at 633.  In determining the RFC, the ALJ reviewed: the

objective medical evidence; the findings of treating physicians; the opinions of physical

examiners; the opinions of medical consultants; two opinions of a mental consultative examiner;

two opinions of a psychological consultant; Dr. Braun's testimony; and Gankina's testimony.  R.

at 634-35.

At step four, the ALJ concluded Gankina was unable to perform any past relevant work

as a cook helper.  R. at 638.  The ALJ proceeded to step five and determined there are a

significant number of jobs in the national economy Gankina could perform based on her age,

education, and work history, including cleaner, packer, and outdoor worker.  R. at 639.

On May 11, 2011, the Appeals Council denied Gankina's request for review.  R. at 619-

21.

---

[6] "Light work involves lifting more than 20 pounds at a time with frequent lifting or
carrying of objects weighing up to 10 pounds."  20 C.F.R. § 416.967(a).  A job may also be
categorized as light work if "it requires a good deal of walking or standing, or . . . sitting most of
the time with some pushing and pulling of arm or leg controls."  Id.

FACTUAL HISTORY

Gankina was fifty years old at the time of the ALJ's 2010 decision.  R. at 988.   She worked as a cook in Ukraine, id., but she has not worked since immigrating to the United States in 2001, R. at 67-68.  Gankina rents a room in a house and shares the common areas with two other people.  R. at 985.  She goes food shopping with her roommate's home attendant.  R. at 986.  She rarely cooks, but she does her own laundry.  R. at 986-87.  Gankina has limited contact with her son and other relatives.  R. at 986.  She speaks limited English.  R. at 638.  In her SSI application, Gankina claimed disability based on her depression, anxiety, spinal disorder, and pain in her legs.  R. at 119.

Gankina's medical records show treatment for heel spurs, degenerative disc disease, and depression.  A 2001 X-ray revealed two heel spurs in Gankina's right foot.  R. at 203.  A 2003 MRI indicated Gankina had degenerative disc disease of the lower lumbar spine.  R. at 206.  A March 14, 2007 X-ray showed heel spurs on Gankina's left foot.  R. at 448.  Gankina attended physical therapy for pain in her spine and ankles periodically from March 2003 through the time of the hearing.  R. at 166-67, 181-87, 304-21, 467-500, 770-809.  She also takes prescribed pain medication.  R. at 168-80, 417-47, 454-57, 711-50, 758-59, 762-64.[7]

Gankina was diagnosed with situational depression in November of 2002, R. at 255, and anti-depressants were prescribed, R. at 248.  Later treatment notes show a diagnosis of recurrent major depression.  R. at 235-43.  Gankina continued to see a psychiatrist and a therapist through the time of the hearing.  A psychological examiner noted Gankina's hygiene was "marginal" in

---

[7] I summarize Gankina's medical history of physical impairments only to illustrate the impairments the ALJ must consider in combination with her depression at step three.

2005.  R. at 323.  Nevertheless, a treating psychiatrist noted Gankina's depression was in partial remission in March, May, and July of 2010.  R. at 891-93.

DISCUSSION[8]

I must determine whether substantial evidence supports the Commissioner's final decision.  42 U.S.C. § 405(g); Chandler v. Comm'r of Soc. Sec., ___ F.3d ___, No. 11-2220, 2011 WL 6062067, at *1 (3d Cir. Dec. 7, 2011); Smith v. Comm'r of Soc. Sec., 631 F.3d 632, 633 (3d Cir. 2011); Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005).  The factual findings of the Commissioner must be accepted as conclusive if they are supported by substantial evidence.  Richardson v. Perales, 402 U.S. 389, 390 (1971) (citing 42 U.S.C. § 405(g)); Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 503 (3d Cir. 2009); Rutherford, 399 F.3d at 552.  "Substantial evidence is 'more than a mere scintilla.'"  Diaz, 577 F.3d at 503 (quoting Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999)).  It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson, 402 U.S. at 401 (quoting Consol.

---

[8] Although Gankina alleges the ALJ failed to enforce a subpoena for psychotherapy notes from New Life of Community Health Services ("New Life"), see Pl.'s Br. at 4-7, the record reveals New Life faxed Gankina's medical records to the ALJ on July 22, 2010, five days before the hearing, R. at 818-58.  The records contained: progress notes from individual psychotherapy from November 17, 2008 to July 21, 2010; psychiatric medication notes from December 27, 2004 to July 7, 2010; Annual Comprehensive Biopsychosocial Evaluations from 2004 to 2009; and a medication list.  Id.  The records were cited by the ALJ in his decision.  See R. at 636 (citing July 2010 psychotherapy notes and 2010 psychiatric medication notes).  Dr. Braun testified he reviewed the records in preparation for the hearing.  R. at 967; see also R. at 972.

During a January 23, 2011 telephone conference with both counsel, Gankina's counsel acknowledged "it appears" that additional materials, including significant therapy notes, were sent.  He was unable to articulate what documents were missing or why the documents sent pursuant to the subpoena were insufficient.  Although remand is appropriate in some circumstances for failure to enforce a subpoena, see Mack v. Astrue, No. 09-2028, 2010 WL 571782, at *8 (E.D. Pa. Feb. 12, 2010), remand is not required here because the records were considered by the ALJ.

Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Diaz, 577 F.3d at 503.

I may not weigh the evidence or substitute my own conclusion for that of the ALJ.  Burns v. Barnhart, 312 F.3d 113, 118 (3d Cir. 2002).  I must defer to the ALJ's evaluation of evidence, assessment of the credibility of witnesses, and reconciliation of conflicting expert opinions. Diaz, 577 F.3d at 506.  I am "not permitted to re-weigh the evidence or impose [my] own factual determinations."  Chandler, 2011 WL 6062067, at *1.  If the ALJ's findings of fact are supported by substantial evidence, I am bound by those findings, even if I would have decided the factual inquiry differently.  Fargnoli v. Massanari, 247 F.3d 34, 38 (3d Cir. 2001).  At the same time, however, I must remain mindful that "leniency [should] be shown in establishing claimant's disability."  Reefer v. Barnhart, 326 F.3d 376, 379 (3d Cir. 2003) (quoting Dobrowolsky v. Califano, 606 F.2d 403, 407 (3d Cir. 1979)).

In addition, I retain "plenary review over the ALJ's application of legal principles." Payton v. Barnhart, 416 F. Supp. 2d 385, 387 (E.D. Pa. 2006) (citing Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995)).  Thus, I can overturn an ALJ's decision based on an incorrect legal standard even if I find it was supported by substantial evidence. Id. (citing Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983)).

A claimant is disabled if she is unable to engage in "any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905; Diaz, 577 F.3d at 503.  The claimant satisfies her burden by showing an inability to return to her past relevant work.  Rutherford, 399 F.3d at 551.  Once this showing is made, the burden shifts to the Commissioner to show the claimant, given her age,

education, and work experience, has the ability to perform specific jobs existing in the economy. 20 C.F.R. § 416.920(a)(4)(v); see Rutherford, 399 F.3d at 551.

I.     The ALJ Properly Applied Listing 12.04 in Step Three

Gankina asserts the ALJ misapplied the criteria for Listing 12.04.  Pl.'s Br. at 11-13.  She asserts the ALJ erred in finding Gankina had only moderate difficulties in activities of daily living and in social functioning, rather than marked difficulty.  Id.

Gankina must offer medical findings showing her impairments meet or medically equal a listed impairment.  Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 120 n.2 (3d Cir. 2000); see also Poulos v. Comm'r of Soc. Sec., 474 F.3d 88, 92 (3d Cir. 2007) (claimant bears burden of establishing steps one through four).  "For a claimant to show that [her] impairment matches a listing, it must meet all of the specified medical criteria.  An impairment that manifests only some of those criteria, no matter how severely, does not qualify."  Sullivan, 493 U.S. at 530 (emphasis omitted).

Listing 12.04 is met when the claimant satisfies the requirements in both 12.04A and 12.04B.  See 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.  12.04A requires "medically documented persistence, either continuous or intermittent, of one of the following [syndromes]": depressive, manic, or bipolar ("Paragraph A Criteria").  Id.  The claimant must then meet 12.04B by showing one of these syndromes results in at least two of the following: "marked[9] restriction

---

[9] A marked limitation "means more than moderate but less than extreme," and "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis."  20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C.

of activities of daily living"; "marked difficulties in maintaining social functioning"[10]; "marked difficulties in maintaining concentration, persistence, or pace"; or "repeated episodes of decompensation, each of extended duration" ("Paragraph B Criteria").  Id.

The ALJ's finding that Gankina's depression did not meet the Paragraph B criteria is supported by substantial evidence.[11]  The ALJ relied on Dr. Braun, who testified that Gankina did not meet Listing 12.04.  R. at 631-32.  Dr. Braun, after reviewing Gankina's treatment records, determined that although Gankina has marked difficulty in maintaining concentration, persistence or pace, she has only moderate difficulties in her activities of daily living and in social functioning.[12]  R. at 968.

The ALJ found Dr. Braun's opinion was supported by the record.  R. at 631-32. Although Gankina rarely cooks and her self-care was marginal, she does laundry on a limited

---

[10] Social functioning is described as follows:

Social functioning refers to [the claimant's] capacity to interact independently, appropriately, effectively, and on a sustained basis with other individuals.  Social functioning includes the ability to get along with others, such as family members, friends, neighbors, grocery clerks, landlords, or bus drivers. . . .  Social functioning in work situations may involve interactions with the public, responding appropriately to persons in authority (e.g., supervisors), or cooperative behaviors involving coworkers.

20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00C(2).

[11] The parties do not dispute that: the Paragraph A Criteria were met; Gankina has marked difficulty in maintaining her concentration, persistence, and pace; and Gankina has no episodes of decompensation.

[12] Dr. Braun reached his conclusion after reviewing Gankina's treatment records, which were current up to the month of the hearing.  R. at 967.  He noted recent records from Gankina's treating psychiatrist suggested Gankina's depression was in partial remission.  R. at 972; see also R. at 891-93.

basis and goes shopping with other people.  R. at 632; see also R. at 323, 986-87.  When an ALJ evaluates difficulty in activities of daily living, he must "determine the extent to which [a claimant is] capable of initiating and participating in activities independent of supervision or direction."  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00C(1).  Gankina lives in a rented room by herself and does laundry without supervision or direction.  R. at 985-87.  Although Gankina claims her marginal self-care establishes she has marked difficulty in her activities of daily living, see Pl.'s Br. at 12, the ALJ noted such evidence was historical, R. at 632.  More recent records from 2009 and 2010 confirm Gankina was appropriately dressed and groomed at her appointments.  R. at 679-84.

Dr. Braun's conclusion that Gankina has moderate difficulty in maintaining social functioning was supported by substantial evidence because Gankina prefers to be alone, has not been communicating with relatives, and is removed from neighbors and community groups.  R. at 632; see also R. at 987.  A "marked" difficulty in social functioning is "not define[d] . . . by a specific number of different behaviors in which social functioning is impaired, but by the nature and overall degree of interference with function."  20 C.F.R., Pt. 404, Subpt. P, App. 1, § 12.00C(2).  The ALJ properly concluded that although Gankina was socially isolated, her impairment was not of the degree required for a marked limitation.[13]

The ALJ's finding Gankina's depression did not meet Listing 12.04 is supported by substantial evidence.  A "reasonable mind might accept" the evidence cited to support the ALJ's

_____

[13] The finding also is supported by the other evidence reviewed by the ALJ.  See R. at 631 (ALJ findings were made "in light of the evidence in the case record").  For example, Gankina has a roommate, R. at 986; she goes food shopping with her roommate's home attendant, R. at 986; and her psychiatrist noted she was cooperative at recent appointments, R. at 891-93, 896.

conclusion.  See Richardson, 402 U.S. at 401.

II.     The ALJ Failed to Properly Evaluate Gankina's Multiple Impairments in Combination
        and Assess Listing Equivalency at Step Three

        Gankina also contends the ALJ failed to properly evaluate whether she had a combination

of impairments that met a Listing.  Pl.'s Br. at 8-11.  The ALJ summarily noted only that

Gankina "does not have an impairment or a combination of impairments that meets or medically

equals one of the listed impairments."  R. at 631.

        Although the claimant must prove her impairments equal or meet listed impairments, the

ALJ has a duty "to identify relevant listed impairment(s)," and "'to investigate the facts and

develop the arguments both for and against granting benefits.'"  See Burnett, 220 F.3d at 120 n.2

(quoting Sims v. Apfel, 530 U.S. 103, 111 (2000)).  The ALJ must consider "the combined

impact of the [claimant's]  impairments . . . throughout the disability determination process"  20

C.F.R. § 416.923.

        An ALJ is required to "set forth the reasons for his decision."  Burnett, 220 F.3d at 119.

A conclusory statement is "beyond meaningful judicial review."  Id.  An ALJ's findings "should

be as comprehensive and analytical as feasible and, where appropriate, should include a

statement of subordinate factual foundations on which ultimate factual conclusions are based, so

that a reviewing court may know the basis for the decision."  Cotter v. Harris, 642 F.2d 700, 705

(3d Cir. 1981).  A conclusory statement that the claimant's impairments in combination do not

meet or equal a listed impairment is insufficient to permit "'meaningful judicial review.'" Torres,

279 F. App'x at 152 (quoting Burnett, 220 F.3d at 119); see also Cooper v. Comm'r of Soc. Sec.,

268 F. App'x 152, 156 (3d Cir. 2008) (remanding where the ALJ failed to discuss the claimant's

impairments in combination at step three).  An ALJ's discussion of why a claimant's impairments do not meet listed impairments individually is insufficient under 20 C.F.R. § 416.923(b).  Torres, 279 F. App'x at 152; but see Browning v. Comm'r of Soc. Sec., 958 F.2d 817, 821 (8th Cir. 1991) (ALJ properly considered impairments in combination where he discussed each impairment individually and made a conclusory statement the impairments in combination did not prevent claimant from performing work activity).[14]

Other cases in the Eastern District of Pennsylvania fail to justify the cursory finding made here.  For example, unlike in Palmer v. Astrue, No. 09-820, 2010 WL 1254266, at *2 (E.D. Pa. Mar. 31, 2010), and Del Valle v. Astrue, No. 10-2330, 2011 WL 4470709, at *3 (E.D. Pa. Sept. 23, 2011), the ALJ failed to sufficiently explain his § 416.923 analysis.  In Palmer, the ALJ's "manner of . . . explanation sufficiently enabled review," 2010 WL 1254266, at *2, because the ALJ "evaluated the listings that were implicated by [the claimant's] impairments and made sufficiently clear from his review of [the claimant's] medical conditions that no combination of these impairments would meet or equal a listing," Report and Recommendation at 9, Palmer v. Astrue, No. 09-820 (E.D. Pa. Jan. 29, 2010).  The ALJ evaluated the effect each impairment had on the claimant's ability to socialize, take public transportation, and perform his daily activities, such as household chores.  Id. at 9-11.

Similarly, in Del Valle, the ALJ "repeatedly and expressly" explained how the combination of impairments did not render the claimant disabled.  Del Valle, 2011 WL 4470709, at *3 (ALJ repeatedly stated he considered the claimant's impairments in combination and

---

[14] To the extent Browning supports the Commissioner's position, it is non-binding in this Circuit.  In any event, it fails to permit sufficient judicial review in the manner contemplated in this Circuit.

discussed each individual impairment in detail, thereby permitting meaningful judicial review). No such explanation was offered here.  Palmer noted in Cooper, 268 F. App'x at 156, the claimant made a specific request for impairments to be considered in combination.  See Palmer, 2010 WL 1254266, at *3.  No such formality was required here.  Gankina suffers from three severe impairments, and it is unclear how the ALJ viewed the interplay between her back impairment, foot impairment, and depression.

Although the ALJ analyzed each of Gankina's individual impairments,[15] see R. at 631-33, he made only a conclusory statement that Gankina's combined impairments did not meet or equal a Listing, see R. at 631.  Unlike Del Valle and Palmer, this passing reference is insufficient to permit meaningful judicial review because no supporting reasons were given, and it is unclear how the ALJ considered the interplay between the three severe impairments before concluding Gankina's combination of impairments did not meet or equal a Listing.

III.     Lack of Substantial Evidence to Support the ALJ's RFC Determination

Because I recommend the case be remanded for the ALJ to consider Gankina's impairments in combination at step three, I need not resolve Gankina's additional claim that the ALJ's RFC determination was not supported by substantial evidence.  A remand may produce a different RFC, making discussion of it moot.  See Steininger v. Barnhart, No. 04-5383, 2005 WL 2077375, at *4 (E.D. Pa. Aug. 24, 2005) (not addressing additional arguments because ALJ may revise his findings after remand).

Accordingly, I make the following:

---

[15] The ALJ found Gankina's back impairment and foot impairment did not meet the requirements of Listings 1.02A and 1.04, respectively.  R. at 631.  Additionally, he found her depression did not meet the requirements of Listings 12.04, 12.06, or 12.08.  R. at 631-33.

R E C O M M E N D A T I O N

AND NOW, this 6th day of February, 2012, it is respectfully recommended that Gankina's request for reversal be GRANTED, the decision of the Commissioner is VACATED and REVERSED, and this matter is REMANDED to the Commissioner for further review consistent with this Report and Recommendation.  The Commissioner may file objections to this Report and Recommendation within 14 days after being served with a copy thereof.  See Fed. R. Civ. P. 72.  Failure to file timely objections may constitute a waiver of any appellate rights.  See Leyva v. Williams, 504 F.3d 357, 364 (3d Cir. 2007).

BY THE COURT:

/s/ Timothy R. Rice
TIMOTHY R. RICE
UNITED STATES MAGISTRATE JUDGE

14